1  **JACK J. BOLTAX**
   State Bar No.: 105490
2  1202 Kettner Blvd., Suite 6200
   San Diego, CA 92101
3  Tele. No.: (619)-233-5129
   Fax No.: (619)-234-9973
4  Email: jboltaxlaw@gmail.com

5  Attorney for JOSE GONZALEZ-PERALES

6

7

8                    UNITED STATES DISTRICT COURT

9                   SOUTHERN DISTRICT OF CALIFORNIA
                        (HON. IRMA E. GONZALEZ)
10

11 | UNITED STATES OF AMERICA,        )  **Case No.  08-CR- 1728-IEG**
                                      )
12 |         Plaintiff,                )  MOTION IN LIMINE:
                                      )  1. To Suppress Codefendant Perez's Post-
13 | vs.                               )  Arrest Statements Under Bruton v. U.S.;
                                      )  2. To Prohibit Use of Gonzalez-Perales'
14 | JOSE GONZALEZ-PERALES             )  Prior Conviction as Impeachment
                                      )  Evidence;
15 |         Defendant.                )  3. To Prohibit the Use of Evidence of Drug
                                      )  Organization, Structure and Drug Courier
16 |                                   )  Profile;
                                      )  4. To Prohibit Introduction of Certain
17 |                                   )  Evidence as Irrelevant;
                                      )  5. To Permit Attorney Conducted Voir
18 |                                   )  Dire.
                                      )
19 |                                   )  Date:  9/15/08
                                      )  Time:  2:00 p.m.
20 |                                   )  Dept**:** HON. IRMA E. GONZALEZ
                                      )
21

21 TO:  HONORABLE IRMA E. GONZALEZ, JUDGE, U.S. DISTRICT COURT, SOUTHERN
   DISTRICT OF CALIFORNIA; THE UNITED STATES ATTORNEYS OFFICE, U.S. ATTORNEY
22 KAREN P. HEWITT; ASSISTANT U.S. ATTORNEY ANNE K. PERRY.

23      Jose Gonzalez-Perez, through his attorney Jack J. Boltax, submits the following motion in

24 limine and memorandum in support thereof.

25 //

26 //

                                          1                                    08CR1728

**I.**

**STATEMENT OF THE CASE**

On May 15, 2008, a complaint was filed in U.S. District Court, Southern District of California alleging that Jesus Manuel Perez and Jose Gonzalez-Perales imported 22.60 kilograms (49.72 pounds) of cocaine, in violation of 21 U.S.C. sections 952 and 960.

On or about May 23, 2008, Mr. Perez and Mr. Gonzalez-Perales were indicted in the above entitled case and charged with the following alleged violations of law:

<u>Count One</u>: a violation of 21 U.S.C. sections 952 and 960 (importation of 22.6 kilograms of cocaine) and 18 U.S.C. section 2 (aiding and abetting), occurring on or about May 14, 2008; and

<u>Count Two</u>: a violation of 21 U.S.C. section 841(a)(1) (possession with intent to distribute 22.6 kilograms of cocaine) and 18 U.S.C. section 2 (aiding and abetting).

Motions in limine are currently scheduled to be heard on September 15, 2008 at 2:00 pm before Judge Irma E. Gonzalez. Jury trial is currently scheduled for October 7, 2008 at 9:00 am before Judge Irma E. Gonzalez.

**II.**

**STATEMENT OF ALLEGED FACTS**

The following statement of alleged facts is summarized from the statement of facts attached to the complaint (No. 08MJ8422) in the above-entitled case:

On May 14, 2008 at approximately 10:20 am Jose Manuel Perez attempted to enter the United States through the West Port of Entry at Calexico, California. He was driving a 2000 Chrysler Sebring that he was the registered owner of. Jose Gonzalez-Perales was a passenger in the vehicle.

Mr. Perez was questioned by CBPO J. Stensgard and gave a negative custom declarations. CBPO Stensgard referred the vehicle to secondary for further inspection. An inspection at secondary by CBPO L. Garcia, revealed 20 packages containing a white powdery substance, hidden in a compartment behind the back seat of this vehicle. A sample of this substance field tested

1  positive for cocaine. The packages had a gross weight of 22.60 Kilograms (49.72 pounds).

2  Both Mr. Perez and Mr. Gonzalez-Perales were placed under arrest for importing cocaine.
3  Mr. Perez was interviewed and acknowledged he knew the vehicle contained contraband but thought
4  it was 20 Kilograms of marijuana. He admitted he was going to be paid $1,500.00 to drive the
5  vehicle to a hotel near a car wash in Calexico, California. He also stated that Mr. Gonzalez-Perales
6  was not involved with the smuggling, that Mr. Gonzalez-Perales did not know anything about the
7  drugs hidden in the vehicle and had nothing to do with them. Mr. Perez explained to the
8  interviewing agent that the day before Mr. Gonzalez-Perales had asked him for a ride to Mr.
9  Gonzalez-Perales' probation officer's office in El Centro, California and that earlier the morning of
10 May 14, 2008 Mr. Perez picked him up to take him to that appointment. Mr. Perez also told agents
11 that he and Mr. Gonzalez-Perales were friends and that they spend time together.

12 Mr. Gonzalez-Perales was interviewed and told the agent that he did not know anything
13 about the vehicle or the drugs in it. He also told the agent that Mr. Perez was giving him a ride to
14 meet with his probation officer in El Centro, California. He stated that the was going to the bus
15 station to take a bus to see his probation officer, when he ran into Mr. Perez. He told Mr. Perez
16 where he was going and Mr. Perez offered him a ride there.

17 Mr. Gonzalez-Perales also told agents that he and Mr. Perez were only roommates who did
18 not see each other much. He indicated that he rarely called Mr. Perez on the phone and that the last
19 time he spoke with him was the week before his arrest in this case.

20 Mr. Gonzalez-Perales probation officer has subsequently verified that Mr. Gonzalez-Perales
21 had telephoned him on May 13, 2008 and notified him that Mr. Gonzalez-Perales was going to come
21 and meet with him on May 14, 2008.

22 //
23 //
24 //
25 //
26 //

## II.

### CODEFENDANT PEREZ'S POST-ARREST STATEMENTS CANNOT BE INTRODUCED AT TRIAL IF HIS CASE IS NOT SEVERED FROM MR. GONZALEZ-PERALES'

During a joint trial, the admission into evidence of a non-testifying codefendant's confession that involves another defendant, violates the Sixth Amendment's right to confrontation. Bruton v. United States, 391 U.S. 123 (1968). In Bruton, the U.S. Supreme Court held that the Sixth Amendment of the U.S. Constitution forbids the admission into evidence of a non-testifying codefendant's statements in a joint trial, even where the jury has been given a limiting instruction. Id. "Where two or more defendants are jointly tried … the pre-trail confession of one of them that implicates the others is not admissible against the others unless the confessing defendant waives his Fifth Amendment rights so as to permit cross-examination." Cruz v. New York, 481 U.S. 186, 189-90 (1987). The admission of such hearsay strikes at the very heart of the Confrontation Clause. Even a limiting instruction to disregard such prejudicial evidence as to one but not both of the codefendants, cannot ensure that a defendant will receive a fair trail. Bruton v. U.S., supra.

Even when the codefendants' statements are similar or consistent in some respects, they are not admissible at a joint trial, where they were not identical in all material respects. Lee v. Illinois, 476 U.S. 530 (1986). In Lee, the Supreme Court held that under such circumstances the codefendants' statements were presumptively unreliable and introduction of them at a joint trial violated the Confrontation Clause of the Sixth Amendment. Id.

Consequently, codefendant Perez's post-arrest statement is inadmissible against Mr. Gonzalez-Perales if they are tried together. Alternatively, if the government insists on introducing the codefendant Perez's post-arrest statement then severance of their trials is mandated pursuant to Bruton and its progeny, and Federal Rule of Criminal Procedure Rule 14.

//
//
//

## IV.

**IF MR. GONZALEZ-PERALES TESTIFIES HIS PRIOR CONVICTION FOR MARIJUANA IMPORTATION SHOULD NOT BE PERMITTED TO BE USED TO IMPEACH HIM.  IT IS UNDULY PREJUDICIAL BECAUSE OF ITS SIMILARITY TO THE CHARGE HE IS FACING.  ALTERNATIVELY, THE PRIOR CONVICTION SHOULD BE "SANITIZED."**

Federal Rule of Evidence Rule 609(a) permits the introduction of evidence of the prior conviction record of a witness if "it can be readily determined that establishing the elements of the crime required proof or admission of an act of dishonesty or false statement by a witness."

Federal Rule of Evidence Rule 403 provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusing the issue, or misleading the jury…."  "Unfairly prejudice within the context of Rule 403 means an undue tendency to suggest a decision or an improper basis, commonly, though not necessarily, an emotional one."  Ballou v. Henri Studios, 656 F. 2d 1147 (5th Cir. 1981).  The exclusion of evidence under Rule 403 is more likely when there are less prejudicial alternative means to prove the facts in issue.  Old Chief v. United States, 519 U.S. 172 (1997).

In Old Chief v. United States, supra, the defendant was charged with violating 18 U.S.C. section 922(g)(1), which prohibits the possession of a firearm by anyone with a prior felony conviction.  Old Chief's prior conviction was for assault causing serious bodily injury.  Old Chief offered to stipulate that he had a prior felony conviction, thus rendering the name and nature of his prior offense inadmissible under Federal Rule of Evidence Rule 403.  The government moved to admit the name and nature of the prior offense and the District Court erroneously agreed.

The Supreme Court held that the District Court abused its discretion under Rule 403 when it permitted proof of the judgment of convictions for assault causing serious bodily injury rather limiting the proof to the felony nature of the prior crime.  Admission of the name and nature of the felony prior generalizes "a defendant's earlier bad act into bad character and taking that as raising the odds that he did the bad act now charged (or worse, as calling for preventive conviction even if

he should happen to be innocent momentarily)." Id at 180-81.

Thus, the Supreme Court recognized the potential prejudice based on the overriding considerations as contained in Federal Rules of Evidence 404(b). "There is, accordingly, no question that propensity [to commit a crime] would be an improper basis for conviction and that evidence of a prior conviction is subject to analysis under Rule 403 for relative probative value and for prejudicial risk of misuse as propensity evidence." Id at 182.

Alternatively, if the court decides to permit the prior felony conviction in, to impeach the accused when and if he testifies, it should and can "sanitize" the conviction under 403 by omitting the name and nature of the conviction and letting in evidence of only the felony nature of the prior conviction. Admission of a "sanitized" prior is alternative evidence that is just as probative because it impeaches the accused with proof of the prior felony conviction yet is much less prejudicial than the full judgment of conviction. Id at 185-192.

In the case at bar, if Mr. Gonzalez-Perales testifies then due process and Rule 403 dictate that his prior conviction for importation of marijuana not be admitted as impeachment evidence because it is almost identical to the offense he is charged with. Thus, the jury's knowledge of this will be unduly prejudiced because it is highly likely they will conclude that if he did this before, he must have done it now. Alternatively if Mr. Gonzalez-Perales testifies the court should only permit the jury to learn that he has a prior felony conviction, without disclosing the name or nature of the offense he was convicted of.

## V.

**THE COURT SHOULD EXCLUDE TESTIOMONY REGARDING A) THE VALUE OF THE NARCOTICS, B) THE ORGANIZATION AND STRUCTURE OF A DRUG SMUGGLING ORGANIZATION, AND C) DRUG COURIER PROFILES.**

A. The Government Should Be Precluded From Introducing Evidence of the Value of the Narcotics.

Mr. Gonzalez-Perales objects to any expert testimony about the value of the narcotics seized

1  in this case. This testimony is irrelevant and therefore inadmissible under Rule 402. Even if
2  minimally probative, this evidence should be excluded under Rule 403 because it is unduly
3  prejudicial. Mr. Gonzalez-Perales offers to stipulate that the quantity of narcotics in this case is
4  a distributable, not personal use, quantity. This obviates the need for value testimony, and also
5  counsels for prohibiting the government from bringing the narcotics into the courtroom in an attempt
6  to prejudice the jury. *See* Fed. R. Evid. 403; United States v. Merino-Balderrama, 146 F.3d 758, 762
7  (9th Cir. 1998) (In "Old Chief [the Supreme Court] held that a defendant's offer to stipulate to an
8  element of a crime is relevant evidence that must be factored into a district court's analysis under
9  [Federal Rule of Evidence] 403.").
10      One of the major reasons that the government often seeks to introduce value testimony is to
11 demonstrate that the defendant must have known of the presence of drugs in the car. Because the
12 drugs are valuable, the argument runs, drug smugglers would not entrust them to unknowing
13 couriers. The Federal Rules of Evidence and controlling case law, however, specifically forbid this
14 chain of inference in the form of expert testimony.
15      Rule 704 provides:
16
   No expert witness testifying with respect to the mental state or condition of a
17 defendant in a criminal case may state an opinion or inference as to whether the
   defendant did or did not have the mental state or condition constituting an element of the
18 crime charged or of a defense thereto. Such ultimate issues are matters for the trier of
   fact alone.
19 Fed. R. Evid. 704.
20      Ninth Circuit case law holds that this rule applies any time an expert seeks to opine on
21 a defendant's knowledge, willfulness, or other mental state. *See* United States v. Morales, 108 F.3d
21 1031, 1036 (9th Cir. 1997) ("[t]he language of Rule 704(b) is perfectly plain. It does not limit its
22 reach to psychiatrists and other mental health experts. Its reach extends to all expert witnesses");
23 United States v. Webb, 115 F.3d 711 (9th Cir. 1997) (holding it impermissible under Rule
24 704(b) for expert to testify, even in hypothetical form, whether defendant knew of weapons
25 concealed in car.). Indeed, knowledge—the primary contested issue in this trial—is a mental state.
26 Any proposed expert who would opine (directly or indirectly) that Mr. Gonzalez-Perales must have

1  known that the vehicle he was a passenger in contained cocaine, testifies to his mental processes or
2  condition.  Whatever the form, the government may not use the trappings of "expertise" to bolster
3  speculation regarding Mr. Gonzalez-Perales' alleged knowledge.  This testimony is expressly
4  forbidden by Rule 704 and by Ninth Circuit law.  Drug value testimony must not be used to
5  circumvent these established evidentiary rules.

6          B.  The Government Should Be Precluded from Eliciting "Structure Testimony" From
7            the Value Expert.

8  Typically, the government proffers that its value expert will testify and explain that a
9  passenger in a drug laden vehicle has the critical responsibilities of being present to assist the driver
10 in delivering the load, watch the driver, and to be present in the vehicle to make the circumstances
11 look "normal."  This specific testimony must be excluded.  This proposed opinion is nothing more
12 than "structure testimony" offered through a value expert.  As a result, it invites reversible error.

13 In United States v. Vallejo, 237 F.3d 1008 (9th Cir. 2001), *amended*, 246 F.3d 1150 (9th Cir.
14 2001), the Ninth Circuit held that structure testimony is inadmissible in a non-complex, non-
15 conspiracy drug smuggling case.  As the court wrote, "[t]o admit this testimony on the issue of
16 knowledge, the only issue in the case, was unfairly prejudicial, and an abuse of discretion under
17 Rule 403."  Id. at 1017.  Testimony as to the "critical responsibility" of a passenger presupposes a
18 compartmentalized, organized drug smuggling network.  It assumes that the passenger knows that
19 drugs exist in the vehicles, and couches the endeavor in terms of a "job" willingly taken on by the
20 passenger of the car.  This testimony essentially seeks to assume out of existence the key issue in
21 this trial:  whether Mr. Gonzalez-Perales knew that drugs were in the vehicle he was a passenger in.
21 Such testimony is improper and must be excluded.

22         C.  The Court Should Exclude any Expert Testimony on "Retail Value" Because
23           it is It Irrelevant and Highly Prejudicial.

24 Even assuming that this testimony was otherwise admissible, Rule 403 prohibits expert
25 testimony on the street value of cocaine at trial.  According to the government's argument, this
26 testimony is relevant because drug trafficking organizations would not entrust this "valuable

commodity" to an unknowing person. Several problems exist with this argument. First, there is absolutely no evidence that any vast drug trafficking organization exists in this case: the government's argument rests on facts that are not, and will not, be in evidence. Second, this reasoning rests on rank speculation as to the mental processes of unknown persons. The government cannot simply proffer evidence on what these vague and unknown "drug traffickers" would or would not do in a given situation. There is virtually no probative value in this proposed testimony. In contrast, this testimony will result in substantial prejudice to Mr. Gonzalez-Perales. The sheer monetary value of this cocaine could inflame the passions of the jury, and distract them from Mr. Gonzalez-Perales' lack of knowledge – the true issue in this case. The amount of money at stake could well suggest that a vast drug empire is implicated here; indeed, this inference is a key premise in the government's relevance argument. This insinuation, however, has absolutely no evidentiary support. Beyond the government's attenuated and factually unsupported argument that the value of these drugs demonstrates the defendant's knowledge, absolutely no probative value exists in this testimony. The prejudice, in contrast, is extreme. This testimony should therefore be independently excluded under FRE 403.

### D. The Court Should Preclude the Value Expert From Testifying to Irrelevant Experience Seizing Large Quantities of Narcotics.

Typically, government's expert lists on his qualification summary, experience dealing with large-scale narcotics seizures. Were this Court to allow such an expert to testify to these experiences, the jury might get the wrong impression that this case, too, is linked to larger, more serious seizures. Given that the value expert readily can demonstrate his qualifications without resorting to tales of dramatic drug seizures, Mr. Gonzalez-Perales requests that this testimony be precluded. *See* Fed. R. Evid. 401, 402 and 403.

//
//
//
//

**VI.**

**THIS COURT SHOULD EXCLUDE ANY EXPERT TESTIMONY DESCRIBING THE STRUCTURE OF SUPPOSED DRUG SMUGGLING ORGANIZATIONS, AS IT IS IRRELEVANT, IMPROPER UNDER FRE 702 AND 703, AND UNDULY PREJUDICIAL UNDER FRE 403.**

Under this Circuit's precedent <u>United States v. Vallejo</u> and <u>United States v. McGowan</u>, 274 F.3d 1251 (9th Cir. 2001), structure testimony may not be permitted in this trial. This sort of "expert" testimony not only fails the balancing test set forth by FRE 403, but also is literally irrelevant and an abuse of discretion under FRE 401. <u>Vallejo</u>, 237 F.3d at 1017. The same problem exists with any organizational structure evidence in this case. The government has not charged Mr. Gonzalez-Perales with conspiracy. No evidence whatsoever suggests that a vast drug trafficking network played any role in the instant offense. Any attempt to connect Mr. Gonzalez-Perales to a vast drug empire that has not been alleged and has not been proven violates FRE 401, 403, and Ninth Circuit case law.

A motion in limine excluding such evidence should be granted accordingly.

**VII.**

**THE DEFENSE REQUESTS THE OPPORTUNITY TO *VOIR DIRE* THE JURY PANEL DURING JURY SELECTION**

Jury *voir dire* is a critical stage of the criminal proceedings. <u>Gomez v. United States</u>, 490 U.S. 858, 873 (1989). The purpose of *voir dire* is to help ensure the selection of a fair and impartial jury. During the jury selection process "the defendant must be permitted sufficient inquiry into the backgrounds and attitudes of prospective jurors to enable them to exercise their peremptory challenges." <u>United States v. Harris</u>, 542 F.2d 1282, 1299 (7th Cir. 1976). "[P]eremptory challenges are worthless if trial counsel is not afforded an opportunity to gain the necessary information upon which to base such "challenges." <u>Id</u>. "[J]ustice requires that each lawyer be given an opportunity to ferret out possible bias and prejudice." <u>Id</u>.

Since the goal of *voir dire* is to elicit information about prospective jurors in order to uncover their biases, opinions, attitudes, and life experiences, the judge should let the parties obtain sufficient information about prospective jurors from an informed exercise of challenges for cause and peremptory challenges. United States v. Baldwin, 607 F.2d 1295, 1297 (9th Cir. 1979). Rarely is a juror's bias demonstrated by an outright express admission of the fact. "[M]ore frequently jurors are reluctant to admit actual bias and the reality of their biased attitudes must be revealed by circumstantial evidence" in the form of their responses during *voir dire*. United States v. Allsup, 566 F.2d 68, 71 (9th Cir. 1977); Murphy v. Florida, 421 U.S. 794, 800 (1975) ("the juror's assurances that he is equal to the task cannot be dispositive of the accused's rights").

The right to exercise peremptory challenges is "one of the most important of the rights secured by the accused." Swain v. Alabama, 380 U.S. 202, 219 (1965), *rehearing denied*, 381 U.S. 921, overruled in party by Batson v. Kentucky, 476 U.S. 76 (1986).

The importance of *voir dire* process in the decision making process of for cause and peremptory challenges cannot be understated or overestimated. Federal Rule of Criminal Procedure 24 gives federal judges the discretion to permit counsel to participate in *voir dire*. The right to an impartial jury, particularly in a case involving the importation of cocaine, entails the right to take steps designed to ensure that the jury is impartial. Ham v. South Carolina, 409 U.S. 524 (1973). The defendant has a right to strike jurors who manifest an inability to try a case solely on the evidence. This right can only be meaningfully exercised when counsel has sufficient information with which to evaluate members of the venue. Turner v. Murray, 476 U.S. 28 (1986). Therefore, the range of permissible inquire in order to obtain a fair and impartial jury should be liberally construed. United States v. Napoleone, 349 F.2d 350, 353 (3d Cir. 1965).

The indictment in this case alleges serious and extremely inflammatory conduct, to wit, the importation of a substantial amount of cocaine. The conduct has significant and substantial societal impact. Such allegations are likely to evoke a profound and severely emotional reaction by the jurors. Matters involving subjects like drug smuggling impacts people's personal lives since family members or close friends are often addicted to narcotics. This has a substantial negative impact

1 | personally and emotionally on people who have experienced friends, family members, and children
2 | who have abused and/or have been addicted to drugs.  These are very emotional and private
3 | experiences people may be unwilling to share.  Additionally, the defendants are both of Mexican
4 | descent.  This may invoke emotional responses based on potential jurors preconceptions and
5 | prejudices.  Such issues are again not readily disclosed.
6 |      Thus, due to the circumstances unique to this case, we request this Court give defense
7 | attorney a minimum of 1 ½ hours to directly *voir dire* the jury at the conclusion of the Court's
8 | general inquiry.  This will allow the defense an opportunity to follow up on answers to the Court's
9 | inquiry and ask questions that will ferret out sensitive information that is unique and relevant to this
10 | case, as well as assist us in exercising our for cause and peremptory challenges.
11 | Date:  August 28, 2008          Respectfully submitted,
12 |
13 |                                 /s Jack J. Boltax
    |                                 JACK J. BOLTAX
14 |                                 Attorney for Defendant
    |                                 JOSE GONZALEZ-PERALES

| | |
|---|---|
| 1 | JACK J. BOLTAX, Attorney-at-law |
| | State Bar No.: 105490 |
| 2 | 1202 Kettner Blvd., Suite 6200 |
| | San Diego, CA 92101 |
| 3 | Tele No.:  (619) 233-5129 |
| | Fax No.:   (619) 234-9973 |
| 4 | Email:    jboltaxlaw@gmail.com |
| 5 | **ATTORNEY FOR JOSE GONZALEZ-PERALES** |

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

(Hon. Irma E. Gonzalez)

| | | |
|---|---|---|
| United States of America, | ) | **Case No.  08-CR- 1728-IEG** |
| | ) | |
| Plaintiff, | ) | **PROOF OF SERVICE** |
| | ) | |
| v. | ) | |
| | ) | |
| JOSE GONZALEZ-PERALES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

IT IS HEREBY CERTIFIED THAT:

I, Jack J. Boltax, am a citizen of the United States, and I am at least eighteen years of age. My business address is 1202 Kettner Blvd., Suite 6200, San Diego, California 92101. I am not a party to the above-entitled action.

I hereby certify that I have served:

Motion in Limine:  1. To Suppress Codefendant Perez's Post-Arrest Statements Under Bruton v. U.S.; 2. To Prohibit Use of Gonzalez-Perales' Prior Conviction as Impeachment Evidence; 3. To Prohibit the Use of Evidence of Drug Organization, Structure and Drug Courier Profile; 4. To Prohibit Introduction of Certain Evidence as Irrelevant; 5. To Permit Attorney Conducted Voir Dire.

to the following CM/ECF participants in this case:  Anne Kristina Perry, anne.perry2@usdoj.gov; Elizabeth Barros, Elizabeth_barros@fd.org.

//

1 | There are no non-ECF participants on this case to be notified by United States Parcel Service.

2 | I declare under penalty of perjury that the foregoing is true and correct

3 | Date:  August 28, 2008

4 |                                             /s Jack J. Boltax
                                                JACK J. BOLTAX
5 |                                             Attorney for JOSE GONZALEZ-PERALES