KAREN P. HEWITT
United States Attorney
ANNE KRISTINA PERRY
Assistant U.S. Attorney
California State Bar No. 107440
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-5767
Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JESUS MANUEL PEREZ,<br>JOSE GONZALEZ-PERALES,<br><br>Defendants. | Criminal Case No. 08cr1728 IEG<br><br>DATE: September 15, 2008<br>TIME: 2:00 p.m.<br><br>**UNITED STATES' MOTIONS <u>IN LIMINE</u> TO:**<br><br>**(A) ADMIT 404(b) EVIDENCE AS TO EACH DEFENDANT**<br>**(B) PRECLUDE ALL WITNESSES EXCEPT CASE AGENT;**<br>**(C) PROHIBIT REFERENCE TO PUNISHMENT, ETC.;**<br>**(D) PRECLUDE SELF-SERVING HEARSAY;**<br>**(E) LIMIT CHARACTER EVIDENCE;**<br>**(F) PRECLUDE EVIDENCE OF DURESS AND NECESSITY;**<br>**(G) ADMIT DEMEANOR EVIDENCE;**<br>**(H) ADMIT EXPERT TESTIMONY BY THE UNITED STATES;**<br>**(I) PRECLUDE EXPERT TESTIMONY BY DEFENSE;**<br>**TOGETHER WITH STATEMENT OF FACTS, MEMORANDUM OF POINTS AND AUTHORITIES, AND THE UNITED STATES' RENEWED MOTION FOR RECIPROCAL DISCOVERY** |

Plaintiff, the UNITED STATES OF AMERICA, by and through its counsel, KAREN P. HEWITT, United States Attorney, and Anne Kristina Perry, Assistant United States Attorneys hereby files its Motions <u>in Limine</u>. These motions are based upon the files and records of the case together with the attached statement of facts and memorandum of points and authorities.

I

# STATEMENT OF FACTS

**A.   JOSE MANUEL PEREZ' PRIOR OFFENSE**

On December 15, 2006, a blue Plymouth Voyager entered the Calexico, West, Port of Entry. The van was driven by the defendant, JESUS MANUEL PEREZ. He told Customs and Border Protection Officer J. Martinez that he was a U.S. citizen, and that he was going to work. However, Martinez noticed that PEREZ's hands were shaky, and PEREZ was unable to tell him the name of the work place. MARTINEZ referred the vehicle to secondary inspection, where the vehicle was screened by a Narcotics Detector Dog. The dog, "Senna," alerted to the back seat near the driver's side panel. A total of 42.80 of what was later determined to be marijuana was recovered from the vehicle.

ICE agents Henderson and Cervantes conducted an interview of PEREZ. Prior to any questioning, Agent Cervantes advised PEREZ of his constitutional rights, using a printed form. PEREZ relinquished his rights and spoke to the agents. He advised that he was crossing drugs for someone named Cesar. Eventually, he pled guilty to a charge of Importation of Controlled Substance, in Case No. 07cr0099 BEN. Records in this courthouse demonstrate that PEREZ was sentenced to a term of 18 months' custody and was to serve three years' supervised release.

**B.   JOSE GONZALEZ-PERALES' PRIOR OFFENSE**

On May 28, 2006, JOSE GONZALEZ-PERALES (GONZALEZ) entered the Calexico, East Port of Entry as the driver and sole occupant of 1999 Dodge Intrepid with California plates. At primary inspection, GONZALEZ made a negative customs declaration. He said that a friend of his was the owner of the car and that he was going to WalMart in Calexico to buy some things. The Customs and Border Protection (CBP) officer at Primary inspection received a hit that the license plate on the car was stolen, so he referred GONZALEZ and the vehicle to secondary inspection.

At secondary, Narcotics Detector Dog "Shadow" alerted to the trunk of the vehicle. CBP officers found a number of packages in the trunk. One of the packages was probed, and a green

1  leafy substance was removed that field-tested positive for marijuana. The total weight of the
2  packages was more than 180 kilograms.

3  GONZALEZ was advised of his constitutional rights by ICE agents, waived them, and
4  agreed to speak with them. He told the agents that he wasn't making much money in
5  construction and one of his co-workers told him there was an "easy way" to make money. He
6  was put in touch with a man named "Gordo," who offered him money to cross a car into the
7  United States. Gordo and another man brought him a car and told him to cross it. While he
8  admitted that he thought there was marijuana in the car, he did not know the quantity.

9  GONZALEZ plead guilty to the charge of importing marijuana into the United States on
10 July 19, 2006, in case number 06cr1414 DMS. He received a sentence of 24 months' custody
11 and 3 years of supervised release.

12 **C.    THE INSTANT OFFENSE**

13 On May 14, 2008, at about 10:20 in the morning, JESUS MANUEL PEREZ entered the
14 Calexico West Port of Entry, driving a brown Chrysler Sebring. He was not alone on this
15 occasion; he was accompanied by passenger JOSE GONZALEZ-PERALES. PEREZ stated that
16 he had nothing to declare, but the vehicle was referred to secondary as a hit from an automated
17 targeting system. Customs and Border Protection Officer Stensgard noticed that PEREZ started
18 to get nervous when he learned he was being referred to secondary.

19 At secondary inspection, Customs and Border Protection Officer Garcia questioned
20 PEREZ about the ownership of the vehicle, and his destination. PEREZ stated that he was
21 heading to Calexico to go shopping and that he owned the vehicle. Narcotics Detector Dog
22 Astrix alerted to the back seat of the vehicle. There were twenty packages of white substance
23 in a specially built compartment in the back of the car. The substance field-tested positive for
24 cocaine.

25 ICE agents Dotson and Gates responded to the port of entry. They interviewed both
26 defendants. PEREZ admitted knowing that drugs were in the vehicle, but was surprised to learn
27 that the drugs were cocaine, as opposed to marijuana. PEREZ told the agents that GONZALEZ
28 did not know there were drugs in the vehicle. GONZALEZ told the agents the same thing.

## II.

## **MOTIONS IN LIMINE**

**A.   THE COURT SHOULD ADMIT THE DEFENDANTS' PRIOR DRUG SMUGGLING VENTURES AS "OTHER ACTS" EVIDENCE PURSUANT TO FED. R. EVID. 404(B)**

Although undoubtedly the Defendants will protest, the fact that both of them were involved in drug smuggling activities very recently (and for which both are still on supervised release) is admissible against both as being "other acts" evidence pursuant to Fed. R. Evid. 404(B). Indeed, the Ninth Circuit has "consistently held that evidence of a defendant's prior possession or sale of narcotics is relavent under Rule 404(b) to issues of intent, knowledge, motive, opportunity, and absence of mistake or accident in prosecutions for possession of, importation of, and intent to distribute narcotics." United States v. Vo, 413 F.3d 1010, 1018 (9th Cir. 2005) (quoting United States v. Merhrmanesh, 689 F.2d 822, 832 (9th Cir. 1982).

The Statement of Facts set forth above demonstrate that both defendants' priors should be admissible. The activities are close in time, and demonstrate the defendants' knowledge and intent in the instant case.

**B.   THE COURT SHOULD EXCLUDE WITNESSES DURING TRIAL WITH THE EXCEPTION OF THE UNITED STATES' CASE AGENT**

Under Federal Rule of Evidence 615(3), "a person whose presence is shown by a party to be essential to the presentation of the party's cause" should not be ordered excluded from the court during trial. The case agent in the present matter has been critical in moving the investigation forward to this point and is considered by the United States to be essential to the presentation. As such, the case agent's presence at trial is necessary to the United States. However, the United States requests that Defendant's testifying witnesses be excluded during trial pursuant to Rule 615.

**C.   THE COURT SHOULD PROHIBIT REFERENCE TO DEFENDANT'S HEALTH, AGE, FINANCES, EDUCATION AND POTENTIAL PUNISHMENT**

Evidence of, and thus argument referring to, Defendant's health, age, finances, education and potential punishment is inadmissible and improper. "Evidence which is not relevant is not admissible." Fed. R. Evid. 402. Rule 403 provides further that even relevant evidence may be

inadmissible "if its probative value is substantially outweighed by the danger of unfair prejudice." The Ninth Circuit Model Jury Instructions explicitly instruct jurors to "not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy." § 3.1 (2000 Edition).

Moreover, it is inappropriate for a jury to be informed of the consequences of their verdict. United States v. Frank, 956 F.2d 872, 879 (9th Cir. 1991). Any mention of penalty or felony status is irrelevant as it sheds no light on the Defendant's guilt or innocence. Therefore, the United States respectfully requests this Court to preclude any mention of possible punishment at any point in this trial.

Reference to Defendant's health, age, finances, education and potential punishment may be relevant at sentencing. However, in a drug smuggling trial, such reference is not only irrelevant and unfairly prejudicial, but a blatant play for sympathy and jury nullification as well.

**D.    SELF-SERVING HEARSAY IS INADMISSIBLE**

Defendant's out of court statements are inadmissible hearsay when offered by Defendant through witnesses. Defendant cannot rely on Fed. R. Evid. 801(d)(2) because he is not the proponent of the evidence, and the evidence is not being offered against him. Defendant cannot attempt to have "self-serving hearsay" brought before the jury without the benefit of cross-examination. See, e.g., United States v. Ortega, 203 F.3d 675, 679 (9th Cir. 2000); United States v. Fernandez, 839 F.2d 639, 640 (9th Cir. 1988).

In this case, the United States anticipates that the Defendants may attempt to have the United States' witnesses testify about statements other than their admissions. Thus, the United States moves, in limine, to prohibit Defendants from eliciting self-serving hearsay from: (a) the United States' witnesses or (b) defense witnesses.

**E.    THE COURT SHOULD LIMIT CHARACTER EVIDENCE**

The United States anticipates that the Defendants may improperly attempt to introduce testimony regarding specific acts of prior good conduct. Testimony as to multiple instances of good conduct violates Federal Rule of Evidence 405(a). United States v. Barry, 841 F.2d 1400, 1403 (9th Cir. 1987); Government of Virgin Islands v. Grant, 775 F.2d 508, 512 (3d Cir. 1985).

1    Federal Rule of Evidence 404(a)(1) further states that evidence of a person's character
2 is not admissible for the purpose of proving a person's actions on a particular occasion except
3 "evidence of a pertinent trait of character offered by an accused or by the prosecution to rebut
4 the same."

5    A character witness cannot offer specific instances of conduct by the defendant which
6 would tend to support the reputation of the defendant. United States v. Giese, 597 F.2d 1170
7 (9th Cir. 1979) cert. denied, 444 U.S. 972 (1979) (character witnesses must restrict their direct
8 testimony to appraisals of defendant's reputation); United States v. Hedgecorth, 873 F.2d 1307
9 (9th Cir. 1989) ("While a defendant may show a characteristic for lawfulness through opinion
10 or reputation testimony, evidence of specific acts is generally inadmissible").

11    In interpreting the permissible scope of character evidence under Rule 404(a), the Ninth
12 Circuit has ruled that presentation of witnesses to testify about a defendant's character for "law
13 abidingness" and honesty is permissible.  The appellate court, however, has held that asking a
14 defense witness about the defendant's propensity to engage in a specific type of criminal activity
15 is not allowed under Rule 404(a).  See United States v. Diaz, 961 F.2d 1417 (9th Cir. 1992)
16 (impermissible to ask character witness about defendant's propensity to engage in large scale
17 drug dealing).

18    Thus, the United States hereby moves in limine to prohibit Defendants from introducing
19 testimony from any character witness about (a) specific instances of their conduct, and (b) their
20 propensity to be involved in smuggling.

21 **F.    THE COURT SHOULD PRECLUDE EVIDENCE OF DURESS AND NECESSITY**

22    A pretrial motion is an appropriate means of testing the sufficiency of a proffered defense
23 and precluding evidence thereof if the defense is found to be insufficient. Fed. R. Crim. P. 12(b)
24 ("Any defense, objection, or request which is capable of determination without the trial of the
25 general issue may be raised before trial by motion."); United States v. Peltier, 693 F.2d 96, 97-98
26 (9th Cir. 1982) (per curiam); United States v. Shapiro, 669 F.2d 593, 596-97 (9th Cir. 1982); see
27 also Fed. R. Crim. P. 12(e).

28

Generally, motions are capable of pretrial determination if they raise issues of law, rather than issues of fact. United States v. Jones, 542 F.2d 661, 664 (6th Cir. 1976). Courts have specifically approved the pretrial exclusion of evidence relating to a legally insufficient duress defense on numerous occasions. See United States v. Bailey, 444 U.S. 394 (1980) (addressing duress); United States v. Moreno, 102 F.3d 994, 997 (9th Cir. 1996), cert. denied, 118 S. Ct. 86 (1997) (addressing duress). Similarly, a district court may preclude a necessity defense where "the evidence, as described in the defendant's offer of proof, is insufficient as a matter of law to support the proffered defense." United States v. Schoon, 971 F.2d 193, 195 (9th Cir. 1992).

In order to rely on a defense of duress, defendant must establish a prima facie case that:

(1) Defendant committed the crime charged because of an immediate threat of death or serious bodily harm;

(2) Defendant had a well-grounded fear that the threat would be carried out; and

(3) There was no reasonable opportunity to escape the threatened harm.

United States v. Bailey, 444 U.S. 394, 410-11 (1980); Moreno, 102 F.3d at 997. If Defendant fails to make a threshold showing as to each and every element of the defense, defense counsel should not burden the jury with comments relating to such a defense. See, e.g., Bailey, 444 U.S. at 416.

A defendant must establish the existence of four elements to be entitled to a necessity defense:

(1) that he was faced with a choice of evils and chose the lesser evil;

(2) that he acted to prevent imminent harm;

(3) that he reasonably anticipated a causal relationship between his conduct and the harm to be avoided; and

(4) that there was no other legal alternatives to violating the law.

See Schoon, 971 F.2d at 195; United States v. Dorrell, 758 F.2d 427, 430-31 (9th Cir. 1985). A court may preclude invocation of the defense if "proof is deficient with regard to any of the four elements." See Schoon, 971 F.2d at 195.

The United States hereby moves for an evidentiary ruling precluding defense counsel from making any comments during the opening statement or the case-in-chief that relate to any purported defense of "duress" or "coercion" or "necessity" unless Defendants make a prima facie showing satisfying each and every element of the defense. The United States respectfully requests that the Court rule on this issue prior to opening statements to avoid the prejudice, confusion, and invitation for jury nullification that would result from such comments.

### G.     DEMEANOR EVIDENCE SHOULD BE ADMITTED

Evidence regarding a defendant's demeanor and physical appearance is admissible as circumstantial evidence that is helpful to the jury's determination as to whether a defendant knew drugs were concealed in the vehicle. Fed.R.Evid. 701; United States v. Hursh, 217 F.3d 761 (9th Cir. 2000) (holding that a jury may consider a defendant's nervousness during questioning at Calexico port of entry); United States v. Fuentes-Cariaga, 209 F.3d 1140, 1144 (9th Cir. 2000) (holding that it is within the ordinary province of jurors to draw inferences from an undisputed fact such as a defendant's nervousness at Calexico port of entry); United States v. Barbosa, 906 F.2d 1366, 1368 (9th Cir. 1990) (holding that a jury could infer guilty knowledge from a defendant's apparent nervousness and anxiety during airport inspection); Unites States v. Lui, 941 F.2d 844, 848 (9th Cir. 1991) (holding that a jury could consider guilty knowledge from a defendant's acting disinterested during airport inspection).

Here, witnesses for the United States may properly testify to Defendants' demeanor and physical appearance, as they have personal knowledge based upon their observations of the Defendants.

### H.     EXPERT TESTIMONY FOR THE UNITED STATES SHOULD BE ADMITTED
#### 1.     Introduction

The United States moves this Court to admit expert testimony regarding the modus operandi of drug couriers and the value of the cocaine involved in this case. In addition, absent a stipulation by Defendant, the United States moves this Court to admit expert testimony regarding the cocaine seized from the Defendants' vehicle. The United States intends to call an Immigration and Customs Enforcement special agent as an expert in narcotics trafficking, the

value of illicit narcotics, and distributable quantities of cocaine. Additionally, the United States will call a forensic chemist from the Drug Enforcement Administration as an expert in identifying cocaine. The Court should admit such testimony as relevant and reliable.

### 2.     **Standard of Admissibility**

If specialized knowledge will assist the trier-of-fact in understanding the evidence or determining a fact in issue, a qualified expert witness may provide opinion testimony on the issue in question. Fed. R. Evid. 702. The trial judge is the gatekeeper regarding the type and scope of expert testimony that should be admitted in any particular trial, and has "broad latitude" in determining the relevance and reliability of such testimony. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 142 (1999).

Determining whether expert testimony would assist the trier-of-fact in understanding the facts in issue is within the sound discretion of the trial judge. United States v. Alonso, 48 F.3d 1536, 1539 (9th Cir. 1995); United States v. Lennick, 18 F.3d 814, 821 (9th Cir. 1994). The district court may consider the Daubert test or any other factors in addressing relevant reliability concerns regarding expert testimony. Kumho, 526 U.S. at 149-50 (noting that "there are many different kinds of experts, and many different kinds of expertise," including, "experts in drug terms, handwriting analysis, criminal modus operandi, . . . .").

The expert's opinion may be based on hearsay or facts not in evidence when the facts or data relied upon are of the type reasonably relied upon by experts in the field. Fed. R. Evid. 703; see, e.g., United States v. Gil, 58 F.3d 1414, 1422 (9th Cir. 1995) (stating "[w]e have consistently held that government agents or similar persons may testify as to the general practices of criminals to establish the defendants' modus operandi.") (internal quotations omitted); see also United States v. Hankey, 203 F.3d 1160, 1168-70 (9th Cir. 2000) (affirming district court's admission of gang expert testimony that gang members would be subject to violent retribution if they testified against another gang member). An expert may provide opinion testimony even if the testimony embraces an ultimate issue to be decided by the trier-of-fact. Fed. R. Evid. 704; United States v. Plunk, 153 F.3d 1011, 1018 (9th Cir. 1998). An experienced narcotics agent may testify in the form of an opinion even if that opinion is

1  based in part on information from other agents familiar with the issue. <u>United States v. Golden</u>, 532 F.2d 1244, 1248 (9th Cir. 1976). The proposed expert testimony "alerts [the jury] to the possibility that combinations of seemingly innocuous events may indicate criminal behavior." <u>United States v. Johnson</u>, 735 F.2d 1200, 1202 (9th Cir. 1984).

### 3. Evidence Regarding Modus Operandi of Drug Couriers

The United States moves to present expert testimony regarding the modus operandi of drug-couriers, in particular, how the drugs are moved from the border cities in Mexico, over the border, and delivered in the United States for further distribution. Such testimony is proper to help the jury understand the evidence in the case, to put that evidence in a relevant context and to ensure the jury does not decide the case in a vacuum. The evidence is relevant to the question whether Defendant knew of the drugs in the vehicle he drove into the United States; and this is exactly the type of evidence deemed appropriate in <u>United States v. Murillo</u>, 225 F.3d 1169 (9th Cir. 2001), and a litany of cases preceding <u>Murillo</u>.

In <u>Murillo</u>, the Ninth Circuit affirmed a district court's decision to allow the United States to introduce drug-courier expert testimony during its case-in-chief. The <u>Murillo</u> court noted that the modus operandi evidence was relevant to the issue of knowledge, and that the expert limited the testimony to the drug-courier's role or methods of operation rather than expounding on the roles of a larger hypothetical drug organization for which no evidence existed in that case. <u>Id.</u> The court distinguished and limited the Ninth Circuit's opinion in <u>United States v. Vallejo</u>, 237 F.3d 1008 (9th Cir. 2000), <u>as amended</u> 246 F.3d 1150 (9th Cir. 2001).

In <u>Vallejo</u>, the Ninth Circuit held that the district court abused its discretion by allowing modus operandi or so-called "structure" evidence to be introduced in a case where the relevancy of the expert testimony to the defendant's knowledge of the drugs was not clearly articulated. <u>Id.</u> at 1015-16. In <u>Murillo</u>, the appellate court noted that <u>Vallejo</u> was also distinguishable because, there, the defendant did not raise an issue about the absence of fingerprints on the drug evidence whereas <u>Murillo</u> challenged the absence of fingerprints. <u>Id.</u> at 1016 n.3 (distinguishing <u>United States v. Alatorre</u>, 222 F.3d 1098, 1099 (9th Cir. 2000)).

The Ninth Circuit in Murillo simply affirmed what has, prior to Vallejo, been a well-established rule in the Ninth and other circuits that expert testimony regarding the modus operandi of a particular business, be it legal or illegal, is admissible even in non-complex, non-conspiracy cases provided the testimony is relevant and helpful to the jury in understanding a fact in issue. See United States v. Campos, 217 F.3d 707, 712, 719 (9th Cir. 2000) (affirming admission of expert testimony during case-in-chief regarding the value of marijuana seized and the structure of drug-smuggling organizations in non-complex case in which conspiracy was not charged); United States v. Webb, 115 F.3d 711, 713-15, 716 (9th Cir. 1997); United States v. Cordoba, 104 F. 3d 225, 229-30 (9th Cir. 1997); Gil, F.3d at 1422; United States v. Palma, 997 F.2d 525, 534-35 (9th Cir. 1993).

Evidence about the drug-trafficking business, as well as admission of evidence about the modus operandi of drug couriers, is consistent with well-established law allowing as relevant to knowledge expert testimony about a criminal organization's modus operandi. See Alonso, 48 F.3d at 1536 (holding that law-enforcement officers may testify regarding "typical methods and techniques employed in an area of criminal activity," and explain how defendant's conduct conforms to typical methods); Gil, 58 F.3d at 1421-22 (admitting expert testimony regarding general practice of drug traffickers to establish defendants' modus operandi); United States v. Gutierrez, 995 F.2d 169, 172 (9th Cir. 1993) (permitting officers to testify that "bending, shifting, twisting, shadow, and hand moving" was "furtive" behavior by car occupants); Taren-Palma, 997 F.2d at 534 (upholding expert testimony regarding the use of guns in narcotic transactions); United States v. Bosch, 951 F.2d 1546, 1549 (9th Cir. 1991) (holding that an agent with expertise in narcotics investigations may aid jury in understanding defendant's role in the charged offense); United States v. Jaramillo-Suarez, 950 F.2d 1378, 1384 (9th Cir. 1991) (holding that the expert properly testified regarding drug organization's use of pay-owe sheets to keep track of customers); United States v. Kinsey, 843 F.2d 383, 388 (9th Cir. 1988) (distinguishing testimony about a defendant's guilt or innocence from expert testimony regarding the various roles individuals may play in illegal enterprises); United States v. Guzman, 8439 F.2d 447 (9th Cir. 1988) (admitting expert agent's testimony that car switch is common

1 maneuver used by narcotics traffickers); <u>United States v. Patterson</u>, 819 F.2d 1495, 1507 (9th Cir. 1987) (permitting expert testimony that members of narcotics rings play many different roles, including street salesmen, money collectors, and lookouts); <u>United States v. Stewart</u>, 770 F.2d 825, 831 (9th Cir. 1985); <u>United States v. Fleishman</u>, 684 F.2d 1329, 1335 (9th Cir. 1982); <u>United States v. Maher</u>, 645 F.2d 780, 783 (9th Cir. 1981) (per curium) (allowing expert testimony that a defendant's actions were consistent with the modus operandi of persons transporting drugs).

Given the case law above, this Court should allow expert testimony about, at a minimum, the role and modus operandi of drug couriers. The United States does not intend to introduce during its case-in-chief so-called profile and blind-mule testimony. <u>See</u>, e.g., <u>Reid v. Georgia</u>, 448 U.S. 438, 440 (1979) (defining "drug courier profile" evidence); <u>United States v. Lui</u>, 941 F.2d 844, 846 (1991). However, the United States reserves the right to introduce expert testimony about the modus operandi of drug-trafficking organizations, testimony about vehicle-registration procedures, blind-mule, and profile testimony if Defendant opens the door to any of those categories of evidence during opening statements, cross-examination, or Defendant's case-in-chief. <u>See</u> <u>Vallejo</u>, 237 F.3d at 1016; <u>Alatorre</u>, 222 F.3d at 1100 n.3 (structure and organizational testimony proper because Alatorre raised the fingerprints issue); <u>United States v. Beltran-Rios</u>, 878 F.2d 1208, 1212 (9th Cir. 1989) (drug-courier profile and "blind-mule" testimony admissible where defense counsel opens door).

The Court should admit the requested evidence for the foregoing reasons and to avoid the risk that the jury may not understand how the Defendants' arguably innocuous acts comport with drug smuggling.

### 4. **Evidence Regarding Value of the Cocaine**

The United States moves for the narcotics expert to testify regarding the quantity of cocaine found in the vehicle Defendants brought into the United States, and the street and wholesale value of the cocaine both in the United States and in Mexico. The Ninth Circuit permits the use of such expert testimony.

In <u>United States v. Ogbuehi</u>, 18 F.3d 807, 812 (9th Cir. 1994), the defendant was charged with importation of heroin. At trial, the United States introduced expert testimony regarding the street value of the heroin, assuming the drugs had been repeatedly cut and sold on the street. The Ninth Circuit held that admission of such testimony was proper and that counsel can argue reasonable inferences from the evidence. <u>Id.</u> at 812; <u>see also</u> <u>United States v. Savinovich</u>, 845 F.2d 834, 838 (9th Cir. 1988) (price, quantity and quality of narcotics is relevant to demonstrate defendant's knowledge of the drugs and intent to distribute them); <u>United States v. Kearney</u>, 560 F.2d 1358, 1369 (9th Cir. 1977) (street value of narcotics relevant to demonstrate defendant's knowledge).

The testimony of the United States' expert regarding the quantity and value of the cocaine seized is circumstantial evidence of Defendants' knowledge and intent regarding the cocaine in the vehicle they drove to the port of entry the date of their most recent arrest. Knowledge and intent are essential elements of the offenses charged. The value testimony will tend to show that Defendants knew they possessed the illegal drugs and intended to further distribute them. Most important, such evidence will also help the jury understand the role of the international border on the value of the narcotics, and the facts at issue in this case. Thus, the Court should admit the testimony.

### 5.    22.6 Kilograms of Cocaine is an Amount for Distribution

The United States intends to introduce expert testimony that 22.6 kilograms of cocaine is an amount for distribution, not for personal use. As indicated in the case law cited above, such evidence is relevant and admissible. <u>Kinsey</u>, 843 F.2d at 387-88. The United States intends to offer the narcotics expert's testimony to show that the Defendants intended to distribute the cocaine found in the vehicle. Such testimony is relevant to the issues of knowledge and intent to distribute. Accordingly, the Court should allow such evidence to enable the United States to prove essential elements of the charged offenses.

### 6.    Expert Testimony that the Substance Seized is Cocaine

Absent a stipulation by the Defendants, the United States intends to call a forensic chemist from the Drug Enforcement Administration to testify that the substance seized from

1  Defendant's vehicle is cocaine, a Schedule II controlled substance. The United States anticipates
2  that the forensic chemist will testify that he performed various tests on the substance seized from
3  Defendant's vehicle, and that these tests all indicated that the substance is in fact cocaine. This
4  expert will base this opinion on the chemist's background, education and experience, along with
5  the chemist's knowledge and use of accepted scientific methods of testing. This testimony bears
6  directly on an element of the charged offense -- that cocaine is a prohibited drug.

## I. THE COURT SHOULD PRECLUDE DEFENDANT FROM OFFERING EXPERT TESTIMONY

The United States, pursuant to Federal Rules of Criminal Procedure 12.2 and 16(b), has requested that the Defendants permit the United States to inspect and copy or photograph any results or reports of physical or mental examinations and of scientific tests or experiments made in connection with the particular case, or copies thereof, within the possession or control of Defendant, which Defendant intends to introduce as evidence in his case-in-chief at trial or which were prepared by a witness whom Defendant intends to call at trial. Moreover, the United States requested that Defendant disclose written summaries of testimony that Defendant intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence as evidence at trial. The summaries were to describe the witnesses' opinions, the bases and reasons for those opinions, and the witnesses' qualifications. The Defendants have provided no notice of any expert witness, nor any reports by expert witnesses. Accordingly, Defendants should not be permitted to introduce any expert testimony.

If the Court determines that Defendants may introduce expert testimony, the United States requests a hearing to determine this expert's qualifications and relevance of the expert's testimony pursuant to Federal Rule of Evidence 702 and Kumho Tire Co.. See United States v. Rincon, 11 F.3d 922 (9th Cir. 1993) (affirming the district court's decision to not admit the defendant's proffered expert testimony because there had been no showing that the proposed testimony related to an area that was recognized as a science or that the proposed testimony would assist the jury in understanding the case); see also United States v. Hankey, 203 F.3d 1160, 1167 (9th Cir. 2000).

### III.

### UNITED STATES' RENEWED MOTION FOR RECIPROCAL DISCOVERY

As of the date of the preparation of these motions, Defendants have produced no reciprocal discovery including photographs Defendant intends to introduce at trial. The United States requests that Defendant comply with Rule 16(b) of the Federal Rules of Criminal Procedure, as well as Rule 26.2 which requires the production of prior statements of <u>all</u> witnesses, except for those of Defendant. Defendant has not provided the United States with any documents, photographs, or statements. Accordingly, the United States intends to object at trial and ask this Court to suppress any evidence at trial which has not been provided to the United States.

### IV.

### CONCLUSION

For the above stated reasons, the United States respectfully requests that its Motions <u>in</u> <u>Limine</u> be granted.

DATED: September 2, 2008.

Respectfully Submitted,

KAREN P. HEWITT
UNITED STATES ATTORNEY

/s/ Anne Perry

ANNE KRISTINA PERRY
Assistant United States Attorney
anne.perry2@usdoj.gov

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal Case No. 08CR1728 IEG |
| Plaintiff, | ) | |
| v. | ) | CERTIFICATE OF SERVICE |
| PEREZ AND PERALES, | ) | |
| Defendant. | ) | |

I, Anne Kristina Perry, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of Government's Motions in Limine on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

**Elizabeth Barros, Esq.**
**Jack Boltax, Esq.**

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 2, 2008

*Anne Kristina Perry*
Anne Kristina Perryl
anne.perry2@usdoj.gov